IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-01094-WDM-CBS

SCOTT A. BELLOWS,
    Applicant,
v.

THE HONORABLE THOMAS REED,
    Respondents.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

    This civil action is before the court on Mr. Bellows' "Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody" ("Petition") (filed June 15, 2005) (doc. # 1). Pursuant to the Order of Reference dated April 3, 2008 (doc. # 12), this civil action was referred to the Magistrate Judge to, *inter alia*, "submit proposed findings of fact and recommendations . . . ."

    The Magistrate Judge held a telephone status on May 5, 2008. Counsel for Respondent appeared via telephone. Mr. Bellows did not appear through counsel, in person, or via telephone. (*See* Courtroom Minutes/Minute Order (doc. # 15)). Upon information and belief, counsel of record for Mr. Bellows is deceased. (*See* Status Report (doc. # 14)). On May 5, 2008, the court issued an Order to Mr. Bellows at his last known address, directing Mr. Bellows to

> show cause in writing on or before May 30, 2008 why this civil action
> should not be dismissed for failure to appear at the telephone status
> conference on Monday May 5, 2008, failure to comply with a court Order,
> failure to communicate with the court that he is no longer represented by
> counsel or whether he intends to proceed with this case in his *pro se*

1

capacity, and failure to advise the court pursuant to D.C. COLO. LCivR
10.1 M. within ten days after any change of address or telephone number.

(*See* doc. # 16). As of this date, Mr. Bellows has not responded to the court's Order to Show Cause.

The court has reviewed the Petition, Respondent's Answer (filed August 31, 2005) (doc. # 6), Mr. Bellows' Traverse (filed October 31, 2005) (doc. # 10), the pertinent parts of the state court record, the entire case file, and the applicable law, and is sufficiently advised in the premises.

I.  Background

On April 13, 2003, Mr. Bellows was charged in the Boulder County Court with Obstruction of Telephone Service, Colo. Rev. Stat. § 18-9-306.5, and Obstructing a Peace Officer, Colo. Rev. Stat. § 18-8-104(1)(a). (*See* Respondents' Exhibit A to doc. # 6 (conventionally submitted material) at p. 1 of 39). On September 15, 2003, the trial court held a hearing on Mr. Bellows' motion to suppress, among other motions. (*See* Mr. Bellows' Exhibit 3 to doc. # 11 (conventionally submitted material)). On or about October 6, 2003, a jury found Mr. Bellows guilty of both charges. (*See* Respondents' Exhibit A to doc. # 6 at p. 4 of 39). Mr. Bellows was sentenced to one year of probation, with associated fines and costs. (*See* Respondents' Exhibit G to doc. # 6). Mr. Bellows' sentence of probation was stayed pending his appeal, his petition for certiorari, and this Petition. (*See id.*; *see also* doc. # 14 at p. 2 of 4).

Mr. Bellows appealed his conviction to the Boulder County District Court. On May 11, 2004, the District Court issued a "Ruling and Order" affirming the conviction.

2

(*See* Respondents' Exhibit D to doc. # 6). On August 30, 2004, the Colorado Supreme Court denied Mr. Bellows' "Petition for Certiorari." (*See* Respondents' Exhibits E and F to doc. # 6). Mr. Bellows filed this Petition in federal court on June 15, 2005, raising four claims: (1) that his conviction was obtained in violation of his Fifth Amendment rights because at the motions hearing held on September 15, 2003 he was compelled to answer questions outside the scope of his direct testimony and the court ruled that his testimony would be admissible if he testified at trial; (2) that admission of a witness' out-of-court statement violated Bellows' Sixth Amendment right to confrontation; (3) that he was denied his Sixth Amendment right to be present at trial by the trial judge's *ex parte* communication with the jury; and (4) that the trial court unreasonably applied federal law with respect to the Fourth Amendment in finding exigent circumstances to justify police entry into his room in the apartment. (*See* Petition (doc. # 1) at pp. 4-5 of 7).

II.     One-Year Limitation Period for Filing Application for Federal Habeas Relief

Respondents do not challenge the timeliness of the Petition under the one-year limitation period set forth in 28 U.S.C. § 2244(d)(1).

III.    Exhaustion of State Remedies and Procedural Default

"A threshold question that must be addressed in every habeas case is that of exhaustion." *Harris v. Champion*, 15 F.3d 1538, 1554 (10th Cir. 1994). Before a state prisoner may raise a federal constitutional claim attacking his state conviction in a federal habeas corpus proceeding pursuant to 28 U.S.C. § 2254, he or she must have first exhausted state remedies and provided the state courts with a fair opportunity to

3

apply controlling legal principles to facts bearing on the constitutional claims. *Miranda v. Cooper*, 967 F.2d 392, 397 (10th Cir. 1992). This principle has been codified in 28 U.S.C. § 2254(b)(1).

As a threshold matter, Respondent contends that Mr. Bellows has failed to exhaust his state court remedies as to his third claim because he did not present this claim in the state courts as an issue of federal law. Respondent further contends that Mr. Bellows is now procedurally barred from bringing this claim before the state courts and that this claim should be dismissed with prejudice due to procedural default. The court determines that Mr. Bellows' third claim need not be decided based on the issue of exhaustion because it may be resolved more efficiently on the merits. *See Miller v. Mullin*, 354 F.3d 1288, 1297-98 (10th Cir. 2004) ("In the interest of judicial economy, [w]e need not and do not address these issues, however, because the case may be more easily and succinctly [decided] on the merits.") (internal quotation marks and citations omitted).

IV.     Merits of Mr. Bellows' Claims

A.     Mootness

A habeas petition may be moot if the petitioner is not suffering some adverse collateral consequences of the conviction. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) ("Once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole -- some "collateral consequence" of the conviction-must exist if the suit is to be maintained."). As Mr. Bellows was sentenced to one year of probation that was stayed pending his appeal, his

petition for certiorari, and this Petition (*see* Respondents' Exhibit G to doc. # 6; doc. # 14 at p. 2 of 4), the court cannot conclude that his Petition is moot. *See Oyler v. Allenbrand*, 23 F.3d 292, 294 (10th Cir. 1994) ("because possible adverse collateral consequences could flow from petitioner's conviction, we find we have jurisdiction over this case and petitioner's appeal is not moot.").

B.  Standard of Review

Mr. Bellows filed this habeas proceeding after the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Consequently, federal review of the Petition is governed by the standards set out in 28 U.S.C. § 2254(d) and (e), as amended by the AEDPA. *Williams v. Taylor*, 529 U.S. 362, 402 (2000). *See also Price v. Vincent*, 538 U.S. 634, 638 (2003) ("A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)").

Section 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d). The Supreme Court has construed the language of § 2254(d)(1):

> . . . a decision by a state court is "contrary to" our clearly established law if

5

it "applies a rule that contradicts the governing law set forth in our cases, or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent. . . ."

*Price*, 538 U.S. at 640. In determining whether the state court decision "involved an unreasonable application of clearly established Federal law,"

> a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner."

*Price*, 538 U.S. at 640-41 (internal quotation marks and citations omitted).

When applying § 2254(d)(2), "the factual issues decided by the [state] court are presumed to be correct and [Mr. Bellows] bears the burden of rebutting this presumption by clear and convincing evidence." *Le v. Mullin*, 311 F.3d 1002, 1010 (10th Cir. 2002) (citing 28 U.S.C. § 2254(e)(1)). *See also Fields v. Gibson*, 277 F.3d 1203, 1215-16 (10th Cir. 2002) (If the court treats the issue as a factual determination under § 2254(d)(2) and (e)(1), it must ask whether the petitioner has "rebutted the presumption of correctness by showing, by clear and convincing evidence, that the state court's decision was an unreasonable determination of the facts.").

C.  Analysis

1.  Fifth Amendment

On September 15, 2003, the trial court held a hearing on Mr. Bellows' motion to suppress. On direct examination, Mr. Bellows testified that he had not expected the police officers when they arrived at his apartment and entered his bedroom. (*See* Mr.

6

Bellows' Exhibit 3 to doc. # 11 at pp. 60-61). Mr. Bellows also testified on cross-examination in pertinent part:

> Prosecutor: Mr. Bellows, good afternoon. Now, were you aware that your roommate, Mr. Weekley, had contacted the police that day?
>
> Mr. Bellows: Yeah, I'm aware now, yeah.
>
> Prosecutor: You're aware now, but at the time you were not aware?
>
> Mr. Bellows: I wasn't sure.
>
> Prosecutor: You weren't sure. Did you get on the phone?
>
> Defense Counsel: Objection. Way beyond the scope of direct.
>
> The Court: Overruled.
>
> Mr. Bellows: What's that?
>
> Prosecutor: When your roommate called the police, did you get on the phone?
>
> Mr. Bellows: I picked up the phone, yes.
>
> Prosecutor: Did you unplug the phone?
>
> Defense Counsel: Objection. Way beyond the scope of direct.
>
> The Court: Overruled.
>
> Prosecutor: Did you unplug the phone, Mr. Bellows?
>
> Mr. Bellows: Yes.
>
> Prosecutor: So you knew your roommate was talking to someone then?
>
> Mr. Bellows: Um-hmm.
>
> Prosecutor: And it was the police, was it not?
>
> Mr. Bellows: I guess that's who it turned out to be.

(*See* Mr. Bellows' Exhibit 3 to doc. # 11 at pp. 67-68).

Mr. Bellows argues that this cross-examination forced him to waive his Fifth Amendment rights in order to exercise his Fourth Amendment rights. The district court ruled on appeal that the prosecutor's questioning was a proper attempt to impeach Mr. Bellows' testimony and demonstrate that Mr. Bellows was in fact aware that the police

7

had been contacted because he had disconnected his roommate's 911 call. (*See* Respondents' Exhibit D to doc. # 6 at p. 4 of 18).

Despite Mr. Bellows' reference to Fed. R. Evid. 104(d) (*see* Traverse (doc. # 10) at p. 9 of 28), Mr. Bellows essentially alleges that the trial court committed a violation of the Colorado Rules of Evidence by failing to limit his cross-examination. Claims of "state law violations are not cognizable in a federal habeas action." *Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000) (citing 28 U.S.C. § 2241(c)(3), § 2254(a)). *See also Haas v. Abrahamson*, 910 F.2d 384, 389 (7th Cir. 1990) ("[S]tate court evidentiary rulings, because they are a matter of state law, will rarely serve as a proper basis for granting a writ of habeas corpus."); *People v. Crawford*, 191 Colo. 504, 507, 553 P.2d 827, 829 (1976) (scope of cross-examination is a matter within the sound discretion of the trial court, and its determination will not be disturbed absent an abuse of that discretion). To the extent that Mr. Bellows is alleging a violation of state law, his Petition does not raise a cognizable claim.

Unless a petitioner demonstrates that a specific constitutional right has been violated, a federal court can issue a writ of habeas corpus only when a state evidentiary ruling violates the defendant's due process rights by denying him a fundamentally fair trial. *See Mahorney v. Wallman*, 917 F.2d 469, 472 (10th Cir. 1990) ("when the impropriety complained of effectively deprived the defendant of a specific constitutional right, a habeas claim may be established without requiring proof that the entire trial was thereby rendered fundamentally unfair") (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (distinguishing generalized due process claims based upon objectionable prosecutorial comment, to which fundamental fairness analysis applies, from

particularized claims that prosecution's remarks infringed upon specific constitutional rights)). Mr. Bellows argues that the cross-examination resulted in a violation of his Fifth Amendment rights, relying on *Simmons v. United States*, 390 U.S. 377, 394 91968) ("We therefore hold that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection."). The state courts determined that Mr. Bellows' statements made at the suppression hearing were admissible at trial to impeach him if he testified in a way contrary to his prior statements, citing *People v. Rosa*, 928 P.2d 1365, 1371 (Colo. App. 1996) (holding that *Simmons* "does not protect a defendant from the obligation to testify truthfully, and, therefore, a defendant's suppression hearing testimony may be used to impeach the defendant's contrary trial testimony").

The court concludes that Mr. Bellows has not demonstrated a violation of federal law. The United States Supreme Court has acknowledged that *Simmons* left unanswered the question whether self-incriminating testimony by a defendant at a hearing on a motion to suppress evidence can be used to impeach that defendant if he chooses to testify at his trial on the issue of guilt. *See United States v. Salvucci*, 448 U.S. 83, 93-94 & n. 8 (1980) (noting that a number of courts considering the question have held that such testimony is admissible as evidence of impeachment and expressly holding open the question of "whether *Simmons* precludes the use of a defendant's testimony at a suppression hearing to impeach his testimony at trial.") (citations omitted). *See also Michigan v. Harvey*, 494 U.S. 344, 347-52 (1990) (evidence obtained in violation of Sixth Amendment could be used to impeach defendant's trial

9

testimony); *United States v. Havens*, 446 U.S. 620 (1980) (physical evidence obtained in violation of the defendant's Fourth Amendment rights permitted in the government's rebuttal case to impeach a statement made by the defendant on cross-examination by the prosecutor); *Oregon v. Hass*, 420 U.S. 714 (1975) (evidence obtained in violation of *Miranda* may be used to impeach defendant at trial); *Harris v. New York*, 401 U.S. 222 (1971) (same); *Walder v. United States*, 347 U.S. 62 (1954) (evidence obtained in violation of Fourth Amendment may be used to impeach defendant at trial); *United States v. Jaswal*, 47 F.3d 539, 543 (2d Cir. 1995) ("[p]rior inconsistent suppression hearing testimony may properly be used to impeach a defendant during trial"); *United States v. Beltran-Gutierrez*, 19 F.3d 1287, 1288-89 (9th Cir. 1994) (prosecutor may use compelled information under some circumstances, for example to impeach false testimony introduced at trial); *United States v. Quesada-Rosadal*, 685 F.2d 1281, 1283 (11th Cir. 1982) (use of prior inconsistent statements given at a suppression hearing can be used to impeach a defendant's trial testimony, whether given during direct or cross-examination). As the state courts' rulings regarding the cross-examination were not contrary to clearly established federal law as determined by the United States Supreme Court, Mr. Bellows' claim fails.

2.  Sixth Amendment Right to Confrontation

At trial, the prosecutor called Mr. Bellows' roommate, Mr. Weekley, as the only witness to support the charge of Obstruction of Telephone Service. Mr. Weekley testified that he did not remember the events that had occurred approximately five

months earlier.  (*See* Mr. Bellows' Exhibit 4 of doc. # 11 at pp. 120-26 of 243).  Mr. Weekley's prior written statement was read into the record pursuant to C.R.E. 803(5) but not admitted as an exhibit.  (*See* Mr. Bellows' Exhibit 4 of doc. # 11 at pp. 126-33 of 243).  Mr. Bellows alleges that admission of Mr. Weekley's out-of-court statement violated his Sixth Amendment right to confront the witnesses against him, relying on *Crawford v. Washington*, 541 U.S. 36 (2004).

"The Confrontation Clause of the Sixth Amendment, made applicable to the states through the Fourteenth Amendment, . . . provides that 'in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *Crespin v. State of New Mexico*, 144 F.3d 641, 646 (10th Cir. 1998) (quoting U.S. Const. amend. VI and citing *Pointer v. Texas*, 380 U.S. 400, 403 (1965)).  The right to confront witnesses, while not absolute, is a fundamental prerequisite for due process of law and a fair trial.  *Chambers v. Mississippi*, 410 U.S. 284, 294-95 (1973).

Mr. Bellows' application of *Crawford* to his claim is incorrect.  While "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine . . .  we reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Crawford*, 541 U.S. at 59, n.9.  Where, as here, the alleged victim testifies at trial and is subject to cross-examination, the Confrontation Clause is satisfied and *Crawford* is inapplicable.  *United States v. Wipf*, 397 F.3d 677, 682 (8th Cir. 2005) (citation omitted), *cert. denied*, 546 U.S. 835

11

(2005). Mr. Bellows' claim does not trigger any concern under the Confrontation Clause because the hearsay declarant, Mr. Weekley, testified at trial and was subjected to unrestricted cross-examination by defense counsel. *See United States v. Owens*, 484 U.S. 554, 560 (1988) (where a hearsay declarant is present at trial and subject to unrestricted cross-examination, the "traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements" of the Sixth Amendment). Mr. Bellows is not entitled to habeas relief on this claim.

3. Sixth Amendment Right to Be Present at Trial

On or about October 13, 2003, after the conclusion of the trial, Mr. Bellows filed a motion to disqualify the trial judge. One of the grounds for the motion was that the trial judge had an unrecorded *ex parte* conversation with the jury to discuss scheduling a date for their deliberations. Mr. Bellows claims that this *ex parte* conversation between the trial judge and the jury violated his Sixth Amendment right to be present at all critical stages of the trial.

"An accused has a constitutional right to be present during all critical stages of his or her trial." *Smallwood v. Gibson*, 191 F.3d 1257, 1279 (10th Cir. 1999) (citation omitted). "To a large extent, a defendant's constitutional right to be present at trial proceedings is rooted in the Confrontation Clause of the Sixth Amendment." *United States v. Santiago*, 977 F.2d 517, 522 (10th Cir. 1992) (citation omitted). In proceedings not involving confrontation of witnesses or evidence, as here, a defendant has a right under the Due Process Clause of the Fifth and Fourteenth Amendments to

be present "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Bland v. Sirmons*, 459 F.3d 999, 1020 (10th Cir. 2006) (internal quotation marks and citation omitted), *cert. denied*, 127 S. Ct. 2117 (2007).

"Although a defendant has a due process right to be present . . . , this right does not require that a defendant be present at all proceedings." *Bland*, 459 F.3d at 1020 (internal quotation marks and citation omitted). "Instead, the constitutional right to be present exists to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Bland*, 459 F.3d at 1020-21 (internal quotation marks and citation omitted). Due process does not require the defendants' presence when it "would be useless, or the benefit but a shadow." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (citation omitted). "For example, a defendant need not be present during all communications between a judge and a juror." *Bland*, 459 F.3d at 1021 (citing *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (*per curiam*) (holding that a defendant's absence during an *in camera* discussion between the judge and a juror to ascertain bias did not violate the defendant's right to due process)). In determining whether exclusion of a defendant from a proceeding violated due process, the court considers the proceedings in light of the entire record. *Gagnon*, 470 U.S. at 526-27.

The trial judge did not engage in an improper *ex parte* conversation with the jury and Mr. Bellows' Sixth Amendment rights were not violated by his exclusion from such conversation. With permission of the prosecutor and defense counsel, the trial judge spoke *ex parte* with the jury to discuss scheduling the remainder of the trial. (*See* Exhibit B, attached to Respondent's Exhibit I to doc. # 6). Affidavits of the jurors,

obtained by an investigator of the Boulder County District Attorney, indicated that the judge explained that the jury instructions were still being prepared and apologized for the delay. (*See* Exhibit C, attached to Respondent's Exhibit I to doc. # 6). In response, one juror joked that the delay did not matter, as the jury had already reached a verdict. (*See id.*). The jurors understood that the comment was a joke and that the judge would choose a further date to conclude the trial. (*See id.*). The jurors were excused on Wednesday October 1, 2003 and returned on Monday October 6, 2003 for jury instructions and deliberations. (*See* Exhibit B to Respondent's Exhibit I to doc. # 6).

    The absence of Mr. Bellows from this brief conversation regarding scheduling does not call into question the fundamental fairness of the trial. *See Gagnon*, 470 U.S. at 526 ("the mere occurrence of an *ex parte* conversation between a trial judge and a juror does not constitute a deprivation of a constitutional right"); *Verdin v. O'Leary*, 972 F.2d 1467, 1472 (7th Cir. 1992) (a "brief procedural remark" by the judge to the jury, off the record, did not rise to the level of constitutional error). There is no showing that Mr. Bellows' absence at this exchange between the jury and the judge affected the jury's ability to fairly determine a verdict. The conversation between the judge and the jury merely addressed scheduling matters. There was no evidence that the judge showed any partiality or that the jury was in any way influenced by this exchange. (*See* Exhibits B and C to Respondent's Exhibit I to doc. # 6). To the contrary, the evidence showed that the jury understood the single off-hand comment as a joke and that the jury returned at a later date for jury instructions and deliberations.

    "The substance of the ex parte communications and their effect on juror impartiality are questions of historical fact entitled to this presumption [and the state

14

courts' findings] must be . . . deferred to, in the absence of 'convincing evidence' to the contrary, by the federal courts." *Crease v. McKune*, 189 F.3d 1188, 1193 (10th Cir. 1999). *See also Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004) ("state court factual findings are presumptively correct and may be rebutted only by clear and convincing evidence") (citing 28 U.S.C. § 2254(e)(1)) (internal quotation marks and case citation omitted), *cert. denied*, 545 U.S. 1146 (2005). Mr. Bellows has failed to rebut the presumption of correctness afforded the state court's finding by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

4.  Fourth Amendment

Mr. Bellows claims that the trial court erred in denying his motion to suppress, arguing that the trial court erroneously concluded that exigent circumstances existed to justify the police entry into his room in the apartment.

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 481-82 (1976). *See also United States v. Cook*, 997 F.2d 1312, 1317 (10th Cir. 1993) ("Fourth Amendment violations are not reviewable in a § 2255 motion when the federal prisoner has had a full and fair opportunity to litigate the Fourth Amendment claim at trial and present issues on direct appeal."). The Tenth Circuit Court of Appeals "has held that *Stone's* opportunity for full and fair consideration includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment

15

claim." *Gamble v. State of Oklahoma*, 583 F.2d 1161, 1165 (10th Cir. 1978). "It also includes the full and fair evidentiary hearing contemplated" by *Townsend v. Sain*, 372 U.S. 293 (1963). *Gamble*, 583 F.2d at 1165.[1] The opportunity for full and fair consideration "further contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards." *Gamble*, 583 F.2d at 1165. "Thus, a federal court is not precluded from considering Fourth Amendment claims in habeas corpus proceedings where the state court wilfully refuses to apply the correct and controlling constitutional standards." *Gamble*, 583 F.2d at 1165.

The court has examined the state court record relative to Mr. Bellows' Fourth Amendment claim. First, the state court proceedings sufficed to provide Mr. Bellows with an opportunity for full and fair litigation of this claim. The trial court held a hearing prior to the trial at which Mr. Bellows was represented by counsel. (*See* Mr. Bellows' Exhibit 3 of doc. # 11). The trial court ultimately denied Mr. Bellows' motion to suppress. When Mr. Bellows raised his Fourth Amendment claim on direct appeal, the District Court affirmed the trial court, concluding that "each step of the contact the officers made with the Defendant was justified, and was proper under the Fourth Amendment." (*See* Respondents' Exhibit D to doc. # 6 at pp. 5-7 of 18). The Colorado Supreme Court denied Mr. Bellows' challenge to the trial court's and the District Court's

---

[1] *Townsend* dictated that a federal district court in a habeas corpus proceeding must conduct an evidentiary hearing when the facts are in dispute and the state did not extend an opportunity for the full and fair consideration of Fourth Amendment claims. 372 U.S. 293. *Townsend* has since been significantly qualified by later caselaw and congressional action and the Supreme Court has made clear that the "decision to grant an evidentiary hearing [is] generally left to the sound discretion of the district courts." *Schriro v. Landrigan*, ___ U.S. ___, 127 S. Ct. 1933, 1939 (2007).

determinations. (*See* Respondents' Exhibit F to doc. # 6). This procedural history demonstrates that the state court proceedings sufficed to provide Mr. Bellows with an opportunity for full and fair litigation of this claim.

Second, Mr. Bellows has not provided any grounds to conclude that the state courts "wilfully refuse[d] to apply the correct and controlling constitutional standards." *Gamble*, 583 F.2d at 1165. The record supports the trial court's and the District Court's determinations that exigent circumstances justified warrantless entry into Mr. Bellows apartment and seizure of his person. In reviewing the trial court's ruling, the District Court relied on the state case of *McCall v. People*, 623 P.2d 397 (Colo. 1981). (*See* Respondents' Exhibit D to doc. # 6 at p. 5 of 18). The ruling in *McCall* was solidly based in Fourth Amendment precedent as announced by the United States Supreme Court, including that of *Payton v. New York*, 445 U.S. 573, 586 n. 25 (1980) (warrantless searches of a home are presumptively unreasonable except where police have probable cause for the search and exigent circumstances justify entry without first obtaining a warrant.). *See McCall*, 623 P.2d at 401.

It being clear that Mr. Bellows had a full and fair opportunity to litigate his Fourth Amendment claim in state court, this court may not review his Fourth Amendment claim in this § 2254 Petition.

Accordingly, IT IS RECOMMENDED that the "Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody" ("Petition") (filed June 15, 2005) (doc. # 1) be DENIED and this civil action be dismissed with prejudice.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those

portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 2nd day of July, 2008.

BY THE COURT:


s/Craig B. Shaffer
United States Magistrate Judge