IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 05-cv-01094-WDM-CBS

SCOTT A. BELLOWS,

    Petitioner,

v.

THE HONORABLE THOMAS REED,

    Respondent.

## ORDER ON RECOMMENDATION OF MAGISTRATE JUDGE

Miller, J.

This matter is before me on a recommendation of Magistrate Judge Craig B. Shaffer, issued July 2, 2008 (Docket No. 18), that Petitioner Scott Bellow's Petition udner 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition") (Docket No. 1) be denied. Petitioner did not file an objection to the recommendation and, therefore, is not entitled to *de novo* review. 28 U.S.C. § 636(b); *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1462 (10th Cir. 1988). Having reviewed the pertinent portions of the record in this case, I find that the recommendation should be fully accepted for the following reasons.

<u>Background</u>

On April 13, 2003 Petitioner was arrested and charged with Obstruction of Telephone Service in violation of Colo. Rev. Stat. § 18-9-306.5 and Obstructing a Peace Officer in violation of Colo. Rev. Stat. § 18-8-104(1)(a). The facts surrounding

Petitioner's arrest were as follows: On April 13, 2003, Boulder police received a 911 call from John Weekley, stating that his roommate, Petitioner, was "freaking out." At some point during the call, the phone went dead, but Weekley immediately called 911 again. Officers arrived on the scene and Weekley let them into the shared apartment. From the top of the stairs leading to the basement, where Petitioner was located, one of the officers told Petitioner that he wanted to speak to Petitioner. When Petitioner did not come up from the basement, the officers entered the basement, where they discovered Petitioner tossing furniture around. The officers again told Petitioner that they wished to speak with him. Petitioner remained uncooperative, refusing to drop an alarm clock that he held in his hand. The officers proceeded to disarm Petitioner and place him in handcuffs although they did inform him that he was not under arrest at that time. When the officers attempted to move Petitioner to another room a struggle ensued and an officer was knocked to the ground.

A motions hearing was held on September 15, 2003 regarding, *inter alia*, Petitioner's motion to suppress based on Fourth Amendment violations. Petitioner testified at this hearing regarding the events the occurred after the officers arrived at the apartment. During his cross-examination, however, Respondent allowed questioning that Petitioner believed beyond the scope of direct examination because it related to the 911 call that Weekley had placed prior to the arrival of the officers.

A jury trial was held in Boulder County Court ("County Court") beginning on September 30, 2003. Although somewhat unclear from the record, it appears that due to a delay in completing the jury instructions, Respondent continued the trial until October 6, 2003. To accomplish the rescheduling, Respondent discussed dates with

the jurors during an *ex parte*, off the record, communication. During this conversation, one of the jurors apparently joked that the jurors had already reached a verdict. The jury reconvened on October 6, 2003 to hear closing arguments, receive jury instructions, and begin deliberations. The jury returned guilty verdicts for both charges that day. Petitioner was sentenced to one year of probation with associated fines and costs, but the sentence was stayed pending the appeal, petition for certiorari, and habeas petition.

Petitioner appealed his conviction to the Boulder County District Court ("District Court").[1] The District Court affirmed the conviction on May 11, 2004. Petitioner petitioned for certiorari with the Colorado Supreme Court on June 10, 2004. The Colorado Supreme Court denied certiorari on August 30, 2004. Petitioner filed this habeas action on June 15, 2005.

## Legal Standard

As Petitioner filed his Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), that statute governs my review. *Cannon v. Mullin*, 383 F.3d 1152, 1158 (10th Cir. 2004) (citing *Rogers v. Gibson*, 173 F.3d 1278, 1282 n.1 (10th Cir. 1999)). Under the AEDPA, a district court may only consider a habeas petition when the petitioner argues that he is "in custody in violation of the Constitution or laws or treaties of the United States."[2] 28

---

[1] Pursuant to Colo. R. Crim. P. 37, appeals from a county court judgment may be to the district court.

[2] The parties appear to agree that Petitioner is "in custody" for purposes of federal habeas relief. *See Olson v. Hart*, 965 F.2d 940, 942 (10th Cir. 1992) ("Probationary status is sufficiently 'in custody' pursuant to section 2254 to permit

U.S.C. § 2254(a). Before an application may be considered, however, the petitioner must have exhausted all available state remedies.[3] *Id.* § 2254(b). The grounds for granting a writ of habeas corpus are very limited: "a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d).

A state court decision is "contrary to" clearly established Federal law if it "'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a different result from [Supreme Court] precedent.'" *Price v. Vincent*, 538 U.S. 634, 640 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). A state court decision involves an "unreasonable application" of clearly established Federal law when "'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the [petitioner's] case.'" *Lockyer v. Andrade*, 538 U.S. 63, 75 (2005) (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application'

---

habeas relief." (citations omitted)); *McVeigh v. Smith*, 872 F.2d 725, 727 (6th Cir. 1989) (holding that a habeas petitioner was "in custody" when "her one-year probation period had commenced but was stayed").

[3] There is no dispute that Petitioner exhausted his state remedies prior to filing the Petition.

clause requires the state court decision to be more than incorrect or erroneous . . . . The state court's application of clearly established law must be objectively unreasonable." *Id.* (citing *Williams*, 529 U.S. at 409–10, 412). Indeed, a "'federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" *Id.* (quoting *Williams*, 529 U.S. at 411). Finally, when analyzing an application, all determinations of factual issues by the State court are presumed to be correct and Petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Discussion

Petitioner argues that his constitutional rights were violated in four ways: (1) his Fifth Amendment right to remain silent was violated when, during the suppression hearing, he was required to answer questions on cross examination that were beyond the scope of direct examination and Respondent ruled that his answers would be admissible at trial to impeach him; (2) his Sixth Amendment right to confrontation was violated when a witness's written statement was read into evidence; (3) Respondent's *ex parte* communication with the jury violated Petitioner's Sixth Amendment rights; and (4) Respondent erred in admitting evidence obtained as a result of an unlawful search and seizure. Magistrate Judge Shaffer addressed each of these four arguments and determined that none warranted habeas relief. Therefore, he recommends that the Petition be denied. I agree with Magistrate Judge Shaffer.[4]

---

[4] I also note that the case may be subject to dismissal for failure to respond to a show cause order. On May 5, 2008, Magistrate Judge Shaffer held a telephone status conference for this case. Petitioner did not appear through counsel, in person, or via

1.  <u>Fifth Amendment Right to Remain Silent</u>

First, Magistrate Judge Shaffer determined that Petitioner's Fifth Amendment claim does not warrant habeas relief because it is based on state evidentiary law and the District Court's decision was not contrary to clearly established Supreme Court precedent. To the extent that Petitioner's claim rests on the trial court's failure to abide by a state evidentiary rule (i.e., that cross examination cannot exceed the scope of direct examination), Magistrate Judge Shaffer is correct in determining that habeas relief is unavailable because a habeas petition may not be based on violation of state laws. *See Estelle v. McGuire*, 502 U.S. 62, 67 ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990))).

To the extent Petitioner claims a violation of his Fifth Amendment rights, I agree with Magistrate Judge Shaffer that the County Court's decision does not violate clearly established Supreme Court precedent. Petitioner argues that the County Court's decision regarding the use of his suppression hearing testimony violated his Fifth Amendment rights because he had to waive his Fifth Amendment rights to exercise his

---

telephone. It appears as though Petitioner's counsel of record, Mr. Jeffrey Veigel, is deceased. The same day Magistrate Judge Shaffer issued a show cause order (Docket No. 16) ordering Petitioner to show cause why his Petition should not be dismissed for "failure to appear at the telephone status conference on Monday[,] May 5, 2008, failure to comply with a court Order, failure to communicate with the court that he is no longer represented by counsel or whether he intends to proceed with this case in his *pro se* capacity, and failure to advise the court pursuant to D.C. COLO. LCivR 10.1M. within ten days after any change of address or telephone number." Petitioner was further advised that his failure to comply with the show cause order "may result in dismissal of this civil action without further notice." Petitioner did not respond. Nonetheless, I conclude that dismissal on the merits, as recommended by Magistrate Judge Shaffer, is preferable.

Fourth Amendment rights. At the suppression hearing Petitioner testified about the circumstances surrounding his interaction with the police, which occurred after Weekley's 911 phone call, including the first time he noticed that the officers were at his bedroom door. Cross examination included questioning regarding whether Petitioner had unplugged Weekley's 911 phone call, allegedly to demonstrate that Petitioner was aware from an earlier point that the police were involved in the situation. At the hearing, Petitioner objected to this line of questioning arguing that the questioning was beyond the scope of direct, but the County Court overruled the objection. The County Court also determined that the testimony presented at the suppression hearing could be used to impeach Petitioner at trial, should Petitioner testify.

On appeal, the District Court determined that this was a proper evidentiary ruling and that allowing the suppression hearing testimony to be used for impeachment purposes at the trial did not violate Petitioner's Fifth Amendment rights. Although "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt, *Simmons v. United States*, 390 U.S. 377, 394 (1968), no such restriction has been articulated for use of the testimony for impeachment purposes. In fact, the Supreme Court has expressly acknowledged that it has not determined whether suppression hearing testimony may be used for impeachment purposes during trial. *See United States v. Salvucci*, 448 U.S. 83, 93–94, 94 n.8 (1980). Therefore, habeas relief is not warranted on this basis.

2. <u>Sixth Amendment Right to Confrontation</u>

Second, Magistrate Judge Shaffer determined that the District Court correctly

ruled that cross examination satisfied Petitioner's Sixth Amendment right to confrontation. Weekley, Petitioner's roommate, testified at the trial regarding the events of April 13, 2003, but he could not recall some of the evening's events even after his memory was refreshed with his written statement taken that night. Therefore, the court admitted Weekley's written statement as a recorded recollection under Colo. R. Evid. 803(5). Weekley read his statement into evidence. Petitioner argues that this admission of a prior statement when the author does not remember the events to which the statement pertained, denied him his Sixth Amendment right to confrontation because he could not effectively cross examine the author about the events in the statement. The District Court determined that a witness's lack of memory does not deprive a defendant the opportunity to cross examine that witness and, therefore, the County Court's ruling on the prior statement was in accordance with the Sixth Amendment. I agree with Magistrate Judge Shaffer that this decision was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

The Sixth Amendment's Confrontation Clause provides an accused with the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court has determined that "where testimonial evidence[5] is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68 (2004).

---

[5] The Court did not provide a precise definition of testimonial statements but did provide examples: "*ex parte* in-court testimony or its functional equivalent . . . , extrajudicial statements . . . , [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford v. Washington*, 541 U.S. 36, 51–52 (2004). As Weekley's written statement was given to police officers while they were investigating the 911 call, it was testimonial in nature.

However, "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. . . . The clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Id.* at 59 n.9. Petitioner has cited no Supreme Court authority indicating that such a rule is different when the declarant cannot remember the events to which the prior statement pertains. Therefore, as Weekley testified and was subject to full cross examination at trial, determining that allowing his prior written statement to be read into evidence did not constitute a Sixth Amendment violation was not contrary to Supreme Court precedent. *See id.*

3. <u>Right to be Present</u>

Next, Magistrate Judge Shaffer determined that Respondent's *ex parte* communication with the jury for scheduling purposes did not deprive Petitioner of his constitutional right to be present at trial. Although there is no record to support the allegations, after the close of evidence but before the jury was instructed, Respondent apparently discussed scheduling issues with the jury *ex parte*. During this discussion, one of the jurors stated that "they had already reached a verdict." Petitioner argues that the Sixth Amendment required his presence during this discussion. I agree with Magistrate Judge Shaffer that habeas relief is not available for the claim because Petitioner's presence was not constitutionally required for a discussion regarding scheduling.

Generally, the Sixth Amendment protects a defendant's right to be present during trial. *See United States v. Santiago*, 977 F.2d 517, 522 (10th Cir. 1992). "In proceedings not involving confrontation of witnesses or evidence offered against a

defendant, however, [a defendant] has a right under the Fifth Amendment Due Process Clause to be present 'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" *Id.* (quoting *United States v. Gagnon*, 470 U.S. 522, 526 (1985)); *accord Bland v. Sirmons*, 459 F.3d 999, 1020 (10th Cir. 2006) (quoting *Snyder v. Mashachusetts*, 291 U.S. 97, 105–06 (1934)). This right does not attach to all proceedings. *Bland*, 459 F.3d at 1020 (citing *Snyder* 291 U.S. at 105–06). "Instead, the constitutional right to be present exists 'to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.'" *Id.* (quoting *Snyder*, 291 U.S. at 107–08). "For example, a defendant need not be present during all communications between a judge and a juror." *Id.* (citing *Gagnon*, 470 U.S. at 526). Indeed, "'[t]he defense has no constitutional right to be present at every interaction between a judge and a juror, nor is there a constitutional right to have a court reporter transcribe every such communication.'" *Gagnon*, 470 U.S. at 526 (quoting *Rushen v. Spain*, 464 U.S. 114, 125–26 (1983) (Stevens, J., concurring in judgment)).

In this case, I agree with Magistrate Judge Shaffer that Petitioner was not constitutionally required to be present for the discussion between Respondent and the jurors regarding scheduling.[6] The record demonstrates that Respondent only engaged in *ex parte* communications with the jury after receiving permission from both the prosecutor and defense counsel. Although there was a comment made regarding reaching a verdict prior to closing arguments and jury instructions, affidavits submitted

---

[6] I do note that the District Court did not address this issue as it was raised for the first time in Petitioner's petition for certiorari. Therefore, there is some suggestion that the claim was procedurally defaulted, but I agree with Magistrate Judge Shaffer that addressing this claim on the merits is preferable.

by four members of the jury indicate that each one took this comment as a joke and that the jury did not discuss the case or begin deliberations until after the jury instructions were given. Petitioner's absence from this brief *ex parte* communication did not affect his opportunity to defend against the charge, *Gagnon*, 470 U.S. at 526 (quoting *Snyder*, 291 U.S. at 105–06, 108), nor did it "thwart" his right to a fair and just trial, *Bland*, 459 F.3d at 1020 (quoting *Snyder* 291 U.S. at 107–08). Therefore, Petitioner's claim for habeas relief based on the *ex parte* communication shall be denied.

4. Fourth Amendment

Finally, Magistrate Judge Shaffer concluded that Petitioner was not entitled to habeas relief for his Fourth Amendment claim because he had received a full and fair opportunity to litigate the issue in the state courts. Although generally habeas review is available for constitutional violations, *see* 28 U.S.C. § 2254(a), due to the nature of a Fourth Amendment violation and remedy,[7] that review is limited for alleged Fourth Amendment violations, *Stone v. Powell*, 428 U.S. 465, 494 (1976). "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."

---

[7] The Fourth Amendment protects against unreasonable search and seizure and is generally enforced through the exclusionary rule. *See, e.g.*, *Illinois v. Gates*, 462 U.S. 213, 254 (1983); *Stone v. Powell*, 428 U.S. 465, 482–87 (1976); *United States v. Calandra*, 414 U.S. 338, 347 (1974). "The purpose of the exclusionary rule is not to redress the injury to the . . . victim. . . . Instead, the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures . . . ." *Calandra*, 414 U.S. at 347. Indeed, "[i]ts purpose is to deter—to compel respect for the constitutional guarantee in the only effectively available way—by removing the incentive to disregard it." *Elkins v. United States*, 364 U.S. 206, 2174 (1960).

*Stone*, 428 U.S. at 494. This limitation on federal habeas corpus review is based on the determination that the purposes behind the exclusionary rule do not require that it be applied during federal habeas review.[8]  *Id.*  Indeed, in the federal habeas corpus context "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force."  *Id.* at 494. Although the Supreme Court has not articulated a precise meaning of the phrase "opportunity for full and fair litigation," the Tenth Circuit has determined that it "includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim. It also includes the full and fair evidentiary hearing contemplated by *Townsend[ v. Sain*, 372 U.S. 293 (1963)]. Furthermore, it contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards."  *Gamble v. Oklahoma*, 583 F.2d 1161, 1165 (10th Cir. 1978).  "Thus, a federal court is not precluded from considering Fourth Amendment claims in habeas corpus proceedings where the state court wilfully refuses to apply the correct and controlling constitutional standards."  *Id.*

---

[8] In support the Supreme Court noted that:
[T]he additional contribution, if any, of the consideration of search-and-seizure claims of state prisoners on collateral review is small in relation to the costs.  To be sure, each case in which such claim is considered may add marginally to an awareness of the values protected by the Fourth Amendment.  There is no reason to believe, however, that the overall educative effect of the exclusionary rule would be appreciably diminished if search-and-seizure claims could not be raised in federal habeas corpus review of state convictions.  Nor is there reason to assume that any specific disincentive already created by the risk of exclusion of evidence at trial or the reversal of convictions on direct review would be enhanced if there were the further risk that a conviction obtained in state court and affirmed on direct review might be overturned in collateral proceedings often occurring years after the incarceration of the defendant.
*Id.* at 493.

In this case, the County Court held a suppression hearing prior to trial regarding Petitioner's Fourth Amendment claim. Petitioner was represented and testified at the hearing. The County Court determined that the officers' actions on April 13, 2008 did not violate the Fourth Amendment. Petitioner appealed this decision. The District Court affirmed the County Court concluding that "each step of the contact the officers made with the Defendant was justified, and was proper under the Fourth Amendment." The Colorado Supreme Court denied certiorari. Based on the foregoing, I agree with Magistrate Judge Shaffer that this was sufficient to provide Petitioner with an opportunity for full and fair litigation regarding his Fourth Amendment claim.[9] Furthermore, Petitioner has not identified any controlling constitutional law that the District Court failed to apply.[10] *See Gamble*, 583 F.2d at 1165. Therefore, habeas relief

---

[9] Petitioner argues that he was not provided a full and fair opportunity to litigate the Fourth Amendment issue because he did not have an opportunity to present evidence regarding an investigatory stop. This, however, appears to be Petitioner's choice as he was able to present evidence at the suppression hearing. Furthermore, I note that Petitioner's opening brief in his appeal to the District Court included argument on investigatory stops. Therefore, I conclude that Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims.

[10] Although Petitioner argues that the District Court should have analyzed the officers' contact with Petitioner as an "investigatory stop", this does not amount to a wilful refusal to apply the correct constitutional standard. The District Court adequately analyzed Petitioner's claims addressing exigent circumstances, consent to enter the premises, investigation of an observed potential unlawful act, and concern for officer safety. Furthermore, it appears that the District Court did address the essential elements of an investigatory stop as they examined whether the offices had suspicion that Petitioner was committing a crime. *See Gallegos v. City of Colorado Springs*, 114 F.3d 1024, 1028 (10th Cir. 1997) ("In *United States v. Terry*, 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), the Supreme Court held police officers can temporarily detain an individual suspected of criminal activity if the officer can point to 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'"). I also note that the District Court explicitly discussed whether handcuffing Petitioner turned an investigatory detention into a full Fourth Amendment seizure. Given the foregoing, I conclude that the District Court did

is not available. *See Stone*, 428 U.S. at 494.

Accordingly, it is ordered:

1. Magistrate Judge Shaffer's recommendation (Docket No. 18) is accepted.

2. Petitioner Scott A. Bellows Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Docket No. 1) is denied.

3. This case shall be dismissed with prejudice.

4. Respondent may have his costs.

DATED at Denver, Colorado, on August 11, 2008.

BY THE COURT:

s/ Walker D. Miller
United States District Judge

---

not wilfully refuse to apply the relevant constitutional standards, and, in fact, applied the relevant standard for an investigatory detention; therefore, Petitioner's Fourth Amendment claims are not subject to habeas review.